In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-17-00251-CV**

_____

**GOLDEN YEARS ASSISTED LIVING, Appellant**

**V.**

**PRISCILLA J. RICHARD, ON BEHALF OF BRUCE RICHARD, Appellee**

**On Appeal from the 128th District Court**
**Orange County, Texas**
**Trial Cause No. A150292-C**

**MEMORANDUM OPINION**

This is an accelerated appeal from the trial court's order denying the defendant Golden Years Assisted Living's ("Golden Years" or "Appellant") objections to plaintiff's expert reports and denying a motion to dismiss plaintiff's health care liability claim. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 51.014(a)(9) (West Supp. 2017), 74.351 (West 2017).[1] Golden Years timely filed this appeal complaining that

_____

[1] We cite to the current version of statutes, as subsequent amendments do not affect the disposition of this appeal.

1

the trial court erred in overruling its objections to plaintiff's expert reports and in failing to dismiss the health care liability claim of plaintiff Priscilla J. Richard ("Priscilla"), on behalf of Bruce Richard ("Bruce") ("Plaintiff" or "Appellee"). *See id*. §§ 51.014, 74.351. We affirm.

## Procedural Background

<u>Original Petition</u>

On September 9, 2015, Priscilla filed an Original Petition, Requests for Disclosure and Jury Demand ("the petition") against defendants Golden Years and New Century Hospice, Inc. ("New Century") (collectively "Defendants").[2] The petition asserted a claim of negligence based on care or treatment her husband Bruce received between May and July of 2013 after being admitted to Defendants' facilities in Orange, Texas. The petition alleged that Bruce was admitted to Defendants' facilities in May of 2013, and in June of 2013, he suffered an injury to his left heel. In early July of 2013, Bruce also suffered an injury to "his left lower extremity on the dorsal part of his left foot and ankle." According to the petition, Priscilla saw the second wound on July 15, 2013, and it was apparent to her that the wound had not been properly treated and that Bruce needed to be taken to a hospital. Thereafter,

---

[2] New Century is not a party to this appeal, and we discuss New Century herein only as necessary to our disposition.

2

Bruce was transported to Christus St. Mary's Hospital in Port Arthur where he was diagnosed with cellulitis in his left lower extremity and was started on antibiotics. The Richards were informed that due to a delay and lack of proper care to Bruce's wounds at the Defendants' facility, Bruce would probably never walk again and that it was possible that his foot would have to be amputated. The petition further alleged that, prior to incurring these wounds, Bruce could walk with the assistance of a cane, but now he cannot and he probably will not be able to walk ever again. The petition claimed that the agents, servants, and employees of the Defendants breached the standard of care in the treatment of Bruce, were negligent, and that Defendants' negligence was a proximate or medical cause of Bruce's resulting injuries. The petition also asserted the claim under theories of respondeat superior, alter ego, or agency. The plaintiff attached expert reports from Michael J. Streitmann, M.D. and Erika L. Aguirre, R.N. along with a curriculum vitae (CV) for each expert.

Nurse Aguirre's Report

Nurse Aguirre's report and CV reflect that she is a Registered Nurse, board certified as a Clinical Nurse Specialist in Adult Health. She currently serves as a Clinical Instructor in nursing, and she has previously worked as an Infection Control/Employee Health Practitioner. Aguirre's report stated that she had reviewed the medical records for Bruce from Golden Years for June 7, 2013 to July 15, 2013;

New Century for May 29, 2013 to July 15, 2013; and Christus St. Mary Emergency Department for July 15, 2013.

According to Nurse Aguirre, Bruce became a resident at Golden Years on May 25, 2013, and his care was transferred to hospice on May 28, 2013, due to his Alzheimer's disease and post-traumatic seizures. On June 10, 2013, a nursing note indicated his physical status was starting to decline, he had become non-ambulatory, and he was bedbound. An assessment by a New Century worker on June 13, 2013, noted that Bruce's cognitive and functional status had declined. On June 19, 2013, a hospice nurse for New Century advised Priscilla that Bruce had developed a new Stage 2 pressure ulcer on his left heel, that treatment would be provided, and that Bruce would be placed on a special mattress to prevent further skin breakdown. According to Aguirre, Bruce's medical records reflect that he received wound care for the pressure ulcer on June 19th, 26th, and July 1st, 3rd, 8th, and 10th. In her report, Aquirre noted that on July 10, 2013, a New Century nursing assessment noted that the wound was "beefy red" and showed no signs of infection. Aquirre further stated that on July 15, 2013, Priscilla requested emergency care for Bruce for "aggressive wound treatment to the left foot."

According to Aguirre, Bruce was transferred to Christus St. Mary Emergency Department where an examination revealed an unstageable pressure ulcer on his left

4

heel, and also "traumatic draining Stage 2 ulcer to the dorsal aspect [top side] of his left foot." Bruce was diagnosed with cellulitis of the left leg, admitted to the hospital, and treated with antibiotics, pain management, and wound care, and he was discharged on July 19, 2013 and transferred to Magnolia Manor Nursing Home for continued medical care.

Nurse Aguirre stated in her report that the standard of care related to nursing practices in this case required maintenance of a complete and accurate medical record, documentation of a complete and accurate assessment, development of an individual service plan, and interventions to appropriately manage an injury sustained during admission.

Nurse Aguirre stated that Golden Years and New Century breached the standard of care as follows:

> (1) "Failure to maintain a complete and accurate medical record[.]" Bruce's medical records from Golden Years include no resident assessment, no resident service plan, no physician orders, no advanced directive, and no examination by a physician. The earliest documentation in Bruce's medical records at Golden Years is dated June 7, whereas he was admitted on May 25.
>
> (2) "Failure to document complete and accurate physiological and mental assessments[.]" Aguirre's report noted that Bruce's records do not include a comprehensive medical, physiological, functional, and mental assessment, which should have been completed within fourteen days of admission.

5

(3) "Failure to develop an individual service plan[.]" Aguirre's report states that Bruce's medical record from Golden Years includes no individual service plan even though a New Century nurse identified the Stage 2 pressure ulcer on June 19, 2013.

(4) "Failure to provide interventions to appropriately manage an injury sustained during admission[.]" The last wound assessment documented by New Century nursing staff was on July 10, 2013, when a single wound was noted, the Stage 2 pressure ulcer to Bruce's left heel. On July 15, 2013, an evaluation at the hospital identified not only the pressure ulcer to Bruce's left heel, but also a "traumatic wound" on the top of his left foot. Bruce's Golden Years medical records included no documentation concerning when the injury occurred, how it was evaluated or treated, no notification to medical providers, and no orders for wound care. According to Nurse Aguirre, the wound care that Bruce did receive prior to his hospitalization "was inadequate as evidenced by the massive infection that developed."

Nurse Aguirre concluded that

. . . substandard nursing care management of Mr. Richard's injury to the dorsal aspect of his left foot [top side] resulted in severe infection and cellulitis that has left him wheelchair bound. Furthermore, it is well understood within the nursing community, when a patient's condition or situation exceeds the nurse's level of competency, the nurse must notify a medical provider to ensure patient safety. A delay in communication of a new onset of problems causes a delay in addressing these problems with appropriate treatment. The medical providers were not able to make a clinical decision on how to properly address the injury to the dorsal aspect [top side] of Mr. Richard's left foot that caused him to be hospitalized for five days to receive extensive wound care, pain management and intravenous administration of high dose antibiotics for a left leg infection that ensued. The breaches in the standards of care resulted in complications that were entirely preventable.

Dr. Streitmann's Report

Dr. Streitmann's report and CV reflect that he is a board certified plastic surgeon with more than fifteen years' experience caring for patients with wounds. He has also been a wound care director at a hospital in Houston. Streitmann states in his report that "Mr. Bruce Richard was a patient at New Century Hospice from 5/29/13 to 7/15/13, and developed two wounds on his left foot while in that facility." Streitmann noted that the medical record included no documentation of how the wound to the dorsum of the foot had occurred. Streitmann opined that "[t]he heel dressing could have been too tight and caused the wound[]" and that "[l]ack of preventative care, and lack of adequate wound care once the wounds formed, caused the cellulitis." According to Streitmann, "[h]ad the attending physician been informed of the true status and existence of both wounds, debridement and wound care could have prevented the ensuing cellulitis." Streitmann's report also referred to Nurse Aguirre's report "for documentation of multiple breaches in the standard of care at New Century Hospice."

Golden Years' Objections to the Reports and Motion to Dismiss

On October 23, 2015, Golden Years filed objections, arguing that the reports did not comply with the requirements of Chapter 74. Golden Years argued that Plaintiff's expert reports were deficient because (1) the opinions on standard of care

and breach were conclusory and did not distinguish between Golden Years and New Century, and (2) Dr. Streitmann's opinions on causation were conclusory because they failed to distinguish between Golden Years and New Century and they failed to explain how the alleged breaches in "administrative tasks, such as documenting and maintaining medical records[]" were a substantial factor in causing Bruce's cellulitis or injuries.

On June 23, 2016, Golden Years filed Defendant's Motion to Dismiss for Failure to File an Adequate Expert Report. Therein, Golden Years reiterated its objections and argued that because Plaintiff failed to provide an expert report that meets the requirements of Chapter 74, the "action against Defendant must be dismissed with prejudice[]" under section 74.351.

Plaintiff's Response to the Motion to Dismiss

On August 1, 2016, Plaintiff filed its response to Golden Years' motion to dismiss. Plaintiff first argued that there are deficiencies in Bruce's medical records because the records of Golden Years and of New Century do not document Bruce's injury to the dorsum of his left foot and fail to show who may have administered care for such injury. Plaintiff argued that additional discovery is necessary, that the expert reports should not be determined to be deficient, and that any deficiency is attributable to the medical records. Plaintiff also argued that Bruce was under the

8

care of both Golden Years and New Century and that grouping the Defendants together under a common standard of care does not render an expert report inadequate where multiple defendants are jointly providing care. Plaintiff further argued that Dr. Streitmann's report adequately addressed causation by opining that breaches by Golden Years and New Century "in failing to inform Mr. Richard's physician of each of his wounds and failing to provide adequate and timely wound care caused the cellulitis and hospitalization at issue in this case." Finally, Plaintiff argued that Dr. Streitmann's and Nurse Aguirre's reports constitute a good faith effort under Chapter 74 and requested a thirty-day extension to correct any deficiencies. Plaintiff's response also noted that New Century had not objected to the expert reports.

Golden Years' Reply

On August 4, 2016, Golden Years filed a reply. Golden Years argued that Nurse Aguirre's report failed to identify separate standards of care for Golden Years and for New Century and that Dr. Streitmann's report addressed New Century only and made no mention of Golden Years. In particular, Golden Years noted Dr. Streitmann's observation that "multiple breaches in the standard of care of Mr. Bruce Richard while a patient at New Century Hospice led to cellulitis and admission to Christus St. Mary Hospital on 7/15/13."

<u>Trial Court's Ruling</u>

On August 23, 2016, the trial court signed an order granting Plaintiff a thirty-day extension to cure deficiencies, and explained as follows:

> The report must be more specific as to which breaches of the standard of care apply to Golden Years Assisted Living and which breaches of the standard of care apply to New Century Hospice. The report must explain how and why the breaches by Golden Years Assisted Living caused the injury in question.

<u>Nurse Aguirre's Addendum</u>

On September 20, 2016, Nurse Aguirre authored an addendum to her report, which noted the following breaches in the standard of care by Golden Years:

- Failure to maintain documentation of care, resident assessment, resident service plan, physician orders, advanced directive and examination by a physician.
- Failure to document a comprehensive physiological and mental assessment within fourteen days of admission.
- Failure to develop an individual service plan.
- Failure to provide interventions to appropriately manage an injury sustained during admission.
- As to the injury to the dorsal aspect of the left foot, failure to document how the injury was evaluated or treated, failure to document notification to medical providers, and failure to document orders for wound care.
- Failure to notify New Century of a change in the status of the pressure ulcer.
- Failure to notify physician of development of a Stage 2 heel ulcer.

According to Nurse Aguirre, had the nursing staff of Golden Years or New Century notified a physician of Bruce's injuries, the physician "would have been able to make

10

a clinical decision on how to properly address the problem and adapt the medical plan of care with appropriate treatment."

Dr. Streitmann's Addendum

Also on September 20, 2016, Dr. Streitmann authored an addendum to his report. Therein, Dr. Streitmann explained the following:

> [I]t was apparently a Golden Years Assisted Living employee who pushed a wheelchair into Mr. Richard's foot, causing the initial injury to the dorsum of the left foot. . . . [A] representative of Golden Years Assisted Living[] should have immediately contacted Mr. Richard's attending physician when the new injury to the dorsum of the left foot occurred so that proper wound care could be provided to Mr. Richard's left foot. . . . Failing to notify Mr. Richard's physicians so that proper wound care could be immediately provided, in reasonable probability, caused the cellulitis that was diagnosed upon his admission to the hospital. . . . [H]ad the attending physician been informed of the true status and existence of both wounds, debridement and wound care, in reasonable probability, would have prevented the ensuing cellulitis.

Golden Years' Second Motion to Dismiss

On October 13, 2016, Golden Years filed its second motion to dismiss. Therein, Golden Years argued that the expert reports are conclusory as to standard of care and breach because they did not specify "what care Defendants should have given, but did not." According to Golden Years, Nurse Aguirre's report only provided a "vague" standard of care, which does not provide the specificity required by Chapter 74. Golden Years also argued that Dr. Streitmann's report is conclusory as to proximate cause because it failed to "explain how and why the breach caused

the purported injury[]" and failed to "explain how and why Defendant's alleged failure to maintain proper records was a substantial factor in causing Mr. Richard's injuries." Defendant's second motion to dismiss also argued that only physicians are qualified to opine as to causation as a matter of law.

Plaintiff's Response to Second Motion to Dismiss

In its response, Plaintiff argued that Golden Years and New Century owed the same duty of care to Bruce and that "it is entirely proper to apply the same standard of care to all of the providers and conclude that the providers' breaches of the standard of care collectively caused the Plaintiff's injuries." Plaintiff also asserted that Bruce was under the care of both Golden Years and New Century from May 28 to July 15, 2013. Plaintiff argued that Nurse Aguirre's report sets out what care was expected but was not given, specifically that Golden Years failed to monitor its patient for wounds, failed to notify New Century of a change in status of the heel wound, and failed to "make arrangements so that Mr. Richard could obtain medical treatment for his injuries." According to Plaintiff, the result of these failures was that Bruce's injuries "festered into a severe infection."

Plaintiff also argued that Dr. Streitmann's addendum adequately addresses causation because he opined that Golden Years and New Century should have notified a physician so that proper wound care could be given and that proper wound

12

care would, in all reasonable medical probability, have prevented cellulitis from developing.

<u>Golden Years' Reply</u>

On January 4, 2017, Golden Years filed a reply to Plaintiff's response. Golden Years again argued that Dr. Streitmann's opinion as to causation was conclusory because he "generally opined that Defendant's nurse failed to immediately inform [Bruce's] treating physician regarding the wound" and did not explain how earlier treatment would have avoided the development of cellulitis.

<u>Trial Court's Order and Subsequent Procedural Filings</u>

The trial court heard argument on Golden Years' motion to dismiss on January 4, 2017. On January 11, 2017, the trial court signed an order denying Golden Years' Motion to Dismiss for Failure to File an Adequate Expert Report.

On May 18, 2017, Golden Years filed a Motion for Entry of Order alleging that until about May 1, 2017, it had been informed "that the judge had not ruled on the motion and that she would send a notice when she had decided." Golden Years also alleged that on May 1, 2017, it received an email from counsel for New Century that included the executed order as an attachment. According to Golden Years, "[i]t appears the order was e-filed, but none of the parties received service." The Motion

for Entry of Order requested that the trial court enter a new order denying the motion to dismiss, serving all parties.

Golden Years filed a notice of appeal on May 19, 2017, stating that the trial court notified the parties on May 1, 2017, that it had signed the order denying Golden Years' motion. *See Golden Years Assisted Living v. Richard*, No. 09-17-00171-CV, 2017 Tex. App. LEXIS 5762, at \*1 (Tex. App.—Beaumont June 22, 2017, no pet.) (mem. op.). We dismissed Golden Years' appeal because the notice of appeal was not timely filed. *Id.* at \*\*1-2 (citing Tex. R. Civ. P. 306a(4)).

On June 15, 2017, Plaintiff filed a response to Golden Years' motion for entry of order. Therein, Plaintiff asserted that the trial court filed its signed order denying Golden Years' motion to dismiss on January 11, 2017. According to Plaintiff, counsel for New Century obtained a copy of the order on May 1, 2017, and circulated it to all counsel by email. Plaintiff argued that Golden Years' motion for entry of order "is essentially asking th[e trial court] to enter a new order to correct a 'clerical error not the fault of any of the parties' to extend postjudgment deadlines." According to Plaintiff, lack of notice is not a clerical error and it is improper under Texas law for a trial court to enter a new order that was identical to the previous order for the sole purpose of extending the appellate deadlines. Plaintiff also argued

14

that the trial court's plenary power to vacate the previous order and enter a new order had expired on or about April 11, 2017.

Golden Years filed a reply on June 19, 2017, arguing that the trial court retained plenary power over the case because no final judgment had been rendered and that the trial court had the inherent authority to change or modify an interlocutory order. Golden Years argued that due process requires proper notice. Golden Years also argued that the cases on which Plaintiff relied for its argument that a court may not enter a new order for the sole purpose of extending appellate deadlines pertain to orders entered after a final judgment, and that no final judgment had been entered in this case.

A hearing on the Motion for Entry of Order was held on June 20, 2017. Also on June 20, 2017, the trial court signed an Order on Defendant's Motion for Entry of Order, granting Golden Years' motion for entry of order. On June 29, 2017, the trial court signed an Order on Defendant's Motion to Dismiss for Failure to File an Adequate Expert Report, which stated as follows:

> Came to be heard Defendant GOLDEN YEARS ASSISTED LIVING's Motion to Dismiss for Failure to Produce an Adequate Expert Report, and the Court, having heard the arguments of counsel, is of the opinion that Defendant's Objections and Motion should be in all things, DENIED. It is, therefore,
> ORDERED, ADJUDGED and DECREED that Defendant GOLDEN YEARS ASSISTED LIVING's Motion to Dismiss for

Failure to Produce an Adequate Expert Report is hereby DENIED. It is also,

ORDERED, ADJUDGED and DECREED that the previous order on this motion dated January 11, 2017 is withdrawn for failure to provide notice.

SIGNED this 29th day of June, 2017.

Golden Years subsequently appealed.

## Issues on Appeal

Golden Years argues that the trial court erred in refusing to dismiss the action under Chapter 74 of the Civil Practice and Remedies Code because (1) the expert reports failed to adequately explain the factual basis for the conclusions, (2) the expert reports failed to provide specific information regarding the applicable standard of care and how it was breached, and (3) the expert reports failed to provide specific information regarding how the alleged breaches were a substantial factor in Bruce's claimed injuries.

Appellee's brief argues that this Court lacks jurisdiction over this appeal because the trial court's June 29, 2017 order did not extend the time for the Appellant to perfect an appeal and was not an appealable order because "the trial court [did] not have the plenary powers to issue an identical order on the same matters already ruled upon for the purpose of restarting the clock on a party's ability to appeal an order."

16

## Appellate Jurisdiction

We have jurisdiction over an interlocutory appeal of an order that denies all or part of the relief sought by a motion to dismiss under section 74.351(b). *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9). However, Appellee argues that this Court lacks jurisdiction over this appeal because the Texas Rules of Civil Procedure do not provide a remedy when a party receives notice more than ninety days after an order is signed, and specifically that Rule 306a(4) "cannot extend a trial court's plenary power when a party learns of an order more than 90 days after it is signed." Here, Golden Years did not receive notice of the trial court's order denying its motion to dismiss until about May 1, 2017, which was more than ninety days after January 11, 2017, when the trial court's order was signed. Therefore, as we explained in our previous opinion, Rule 306a(4) does not provide an extension, and Golden Years' interlocutory notice of appeal filed on May 19, 2017, was not timely filed. *Richard*, 2017 Tex. App. LEXIS 5762, at **1-2.

Nevertheless, a trial court has plenary power over a case while it is pending and for thirty days following entry of a final judgment. *See Lane Bank Equip. Co. v. Smith S. Equip., Inc.*, 10 S.W.3d 308, 310 (Tex. 2000) (citing Tex. R. Civ. P. 329b(d); *Check v. Mitchell*, 758 S.W.2d 755, 756 (Tex. 1988)). In this case, no final judgment has been entered. As a general rule, a trial court retains plenary power over

17

its interlocutory orders until a final judgment is entered. *See Fruehauf Corp. v. Carrillo*, 848 S.W.2d 83, 84 (Tex. 1993). Consequently, a trial court has the inherent authority to change or modify any interlocutory order until its plenary power expires. *See In re Commitment of Richards*, 202 S.W.3d 779, 785 (Tex. App.—Beaumont 2006, pet. denied) (citing *Mendez v. San Benito/Cameron Cty. Drainage Dist. No. 3*, 45 S.W.3d 746, 754 (Tex. App.—Corpus Christi 2001, pet. denied)); *see also Fruehauf Corp.*, 848 S.W.2d at 84 ("The trial court also retains continuing control over interlocutory orders and has the power to set those orders aside any time before a final judgment is entered.").

According to Appellee, the trial court's order signed on July 29, 2017 was "identical" to the order signed on January 11, 2017 and "it addressed the same matters which were already ruled upon[.]" Citing to *CTL/Thompson Tex., LLC v. Homes*, 337 S.W.3d 437, 442 (Tex. App.—Fort Worth 2011, pet. denied) and *Anderson v. Casebolt*, 493 S.W.2d 509, 510 (Tex. 1973), Appellee further argues that a trial court cannot issue an identical order on the same matters already ruled upon for the purpose of restarting appellate deadlines. We find those cases inapposite. In *CTL/Thompson*, the Fort Worth Court explained that to the extent a second order "simply rules on the same matters already ruled on by the trial court in [an earlier] order, it is not an appealable order." 337 S.W.3d at 442. In *Anderson*, the

18

Texas Supreme Court stated that a "trial court may not make an order that simply affirms a former judgment and thereby enlarge the period for perfecting an appeal," but Anderson was a case that involved a final judgment and when the trial signed the second judgment and attempted to set aside the first judgment, the trial court had already lost plenary power and lacked jurisdiction to alter any of its previous orders. 493 S.W.2d at 510.

As we have explained, the trial court has the inherent authority to change or modify an interlocutory order. *See Fruehauf Corp.*, 848 S.W.2d at 84; *In re Richards*, 202 S.W.3d at 785. Here, the trial court's June 29, 2017 order expressly withdrew the January 11, 2017 *interlocutory order* and denied Golden Years' motion to dismiss. Therefore, we have jurisdiction over Golden Years' interlocutory appeal from the June 29, 2017 order under section 51.014(a)(9) of the Texas Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9). We reject Appellee's argument and overrule its cross-issue that this Court lacks jurisdiction.

## Standard of Review

We review the trial court's decision regarding the adequacy of a Chapter 74 expert report under an abuse of discretion standard. *See Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015) (citing *Rosemond v. Al-Lahiq*, 331

19

S.W.3d 764, 766 (Tex. 2011); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877 (Tex. 2001)). In reviewing the trial court's decision, we may not substitute our judgment for that of the trial court in reviewing factual matters or matters committed solely to the trial court's discretion. *See In re Mem'l Hermann Hosp. Sys.*, 464 S.W.3d 686, 698 (Tex. 2015) (citing *Walker v. Packer*, 827 S.W.2d 833, 839-40 (Tex. 1992)); *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). "Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred." *Palladian Bldg. Co. v. Nortex Found. Designs, Inc.*, 165 S.W.3d 430, 433 (Tex. App.—Fort Worth 2005, no pet.) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985)). "A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles." *Wright*, 79 S.W.3d at 52. A trial court also abuses its discretion if it fails to analyze or apply the law correctly. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135 (Tex. 2004) (citing *Walker*, 827 S.W.2d at 840).

Expert Report Under Chapter 74

A health care liability claimant must provide each defendant physician and health care provider with an expert report within a specified time. *See* Tex. Civ. Prac.

& Rem. Code Ann. § 74.351(a). The report serves a two-fold purpose: (1) to inform the defendant of the specific conduct the plaintiff has called into question; and (2) to provide a basis for the trial court to conclude the plaintiff's claims have merit. *See Baty v. Futrell*, 543 S.W.3d 689, 693-94 (Tex. 2018) (citing *Palacios*, 46 S.W.3d at 879); *see also In re Buster*, 275 S.W.3d 475, 476-77 (Tex. 2008) (per curiam); *Wright*, 79 S.W.3d at 52; *HEB Grocery Co., L.L.P. v. Farenik*, 243 S.W.3d 171, 173 (Tex. App.—San Antonio 2007, no pet.). The purpose of the expert report requirement is to deter frivolous claims, not to dispose of claims regardless of their merit. *Scoresby v. Santillan*, 346 S.W.3d 546, 554 (Tex. 2011). "The expert report requirement is a threshold mechanism to dispose of claims lacking merit[.]" *Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 631 (Tex. 2013).

The statute defines "expert report" as follows:

> . . . a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6). The defendant may file challenges to the adequacy of the report. *Id.* § 74.351(l).

According to the express wording of the statute, the trial court "shall grant a motion challenging the adequacy of an expert report only if it appears to the court,

21

after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report in Subsection (r)(6)." *Id.* When determining whether the report represents an objective good faith effort to comply with the statute, the trial court's inquiry is limited to the four corners of the report. *See Wright*, 79 S.W.3d at 53 ("[T]he report must include the required information within its four corners."); *Palacios*, 46 S.W.3d at 878 ("a trial court should look no further than the report" to determine whether it meets the statutory requirements). To constitute a good faith effort, the report "must discuss the standard of care, breach, and causation with sufficient specificity to inform the defendant of the conduct the plaintiff has called into question and to provide a basis for the trial court to conclude that the claims have merit." *Palacios*, 46 S.W.3d at 875; *see also Wright*, 79 S.W.3d at 52.

While the report "need not marshal every bit of the plaintiff's evidence," it must provide a fair summary of the expert's opinions as to the applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed. *Jernigan v. Langley*, 195 S.W.3d 91, 93 (Tex. 2006); *Palacios*, 46 S.W.3d at 875, 878; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6). In determining the adequacy of an expert report, a court reviews

the pleadings to determine the claims alleged and whether the report addresses those claims. *See Christus Health Se. Tex. v. Broussard*, 306 S.W.3d 934, 938 (Tex. App.—Beaumont 2010, no pet.) (citing *Windsor v. Maxwell*, 121 S.W.3d 42, 51 (Tex. App.—Fort Worth 2003, pet. denied)). The report must "explain, to a reasonable degree, how and why the breach caused the injury based on the facts presented." *Jelinek v. Casas*, 328 S.W.3d 526, 539-40 (Tex. 2010). "If a health care liability claim contains at least one viable liability theory, as evidenced by an expert report meeting the statutory requirements, the claim cannot be frivolous." *Potts*, 392 S.W.3d at 631.

When determining whether a report adequately explains how the defendant health care provider caused an injury to a patient, we evaluate whether the report demonstrates causation beyond mere conjecture. *See Wright*, 79 S.W.3d at 53 (a conclusory report does not meet the statutory requirements); *Rosemond v. Al-Lahiq*, 362 S.W.3d 830, 836 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (same); *see also HEB Grocery Co., LP v. Galloway*, No. 09-13-00486-CV, 2014 Tex. App. LEXIS 5506, at **19-20 (Tex. App.—Beaumont May 22, 2014, no pet.) (mem. op.) (an expert report must do more than merely make conclusory statements and should address causation and the link between the negligence and the injury alleged). A causal relationship is established "by proof that the negligent act or omission was a

substantial factor in bringing about the harm and without which the harm would not have occurred." *Costello v. Christus Santa Rosa Health Care Corp.*, 141 S.W.3d 245, 249 (Tex. App.—San Antonio 2004, no pet.); *see also Columbia Valley Healthcare Sys., L.P. v. Zamarripa*, 526 S.W.3d 453, 460 (Tex. 2017) (noting that an expert report must explain both foreseeability and cause-in-fact in order to satisfy the Act).

A plaintiff may satisfy the statutory requirements by serving reports by separate experts. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(i). Where a plaintiff does so, we consider the expert reports in the aggregate, and a single expert need not address all liability and causation issues with respect to a defendant. *Id.*; *see also Miller v. JSC Lake Highlands Operations*, 536 S.W.3d 510, 513 (Tex. 2017); *Tenet Hosps. Ltd. v. De La Rosa*, 496 S.W.3d 165, 170 (Tex. App.—El Paso, 2016, no pet.); *Gannon v. Wyche*, 321 S.W.3d 881, 896 (Tex. App.—Houston [14th Dist.] 2010, pet. denied); *Packard v. Guerra*, 252 S.W.3d 511, 526 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). "When a plaintiff sues more than one defendant, the expert report must set forth the standard of care applicable to each defendant and explain the causal relationship between each defendant's individual acts and the injury." *Estorque v. Schafer*, 302 S.W.3d 19, 29 (Tex. App.—Fort Worth 2009, no pet.) (citing Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a), (r)(6);

24

*Sanjar v. Turner*, 252 S.W.3d 460, 465 (Tex. App.—Houston [14th Dist.] 2008, no pet.)). However, grouping defendants together in discussing the relevant standards of care may not render an expert report inadequate when all the defendants owed the same duty to the plaintiff. *Sanjar*, 252 S.W.3d at 466-67 (holding same standard of care may be applied to more than one physician if they all owe the same duty to patient).

Standard of Care and Breach

Appellant argues that Nurse Aguirre's reports are conclusory because she failed to explain the factual basis for her conclusions, and because she failed to explain how Golden Years was responsible for the standard of care outlined given Aguirre's observation that Golden Years had transferred Bruce's care to New Century. Appellant complains that Aguirre impermissibly applied the same standard of care to Golden Years and New Century without explanation and she failed to identify what care was expected but not given.

Nurse Aguirre noted what she described as multiple failures of documentation and communication by Golden Years and explained that her opinion was based on her review of Golden Years' medical records for Bruce. In particular, Aguirre's addendum stated

> [b]ecause Golden Years [] failed to document the injury that Mr. Bruce Richard sustained, nor notify his wife or New Century Hospice of the

injury, nor make arrangements for him to obtain medical treatment for his traumatic injury that not only affected the top of his left foot, but also the pre-existing heel ulcer, Golden Years [] is in breach of the standard of care.

Although Nurse Aguirre's initial report addressed both Golden Years and New Century collectively, her addendum addresses Golden Years individually. The addendum includes the following statements that address Golden Years' standard of care and breach:

- "Golden Years [] failed to maintain this documentation . . ."
- ". . . Golden Years [] failed to document a comprehensive physiological and mental assessment . . ."
- ". . . Golden Years [] failed to maintain an individual service plan . . ."
- "[an employee] of Golden Years [] refused to contact Emergency Medical Services . . ."
- ". . . Golden Years [] should have notified the nursing staff at New Century . . ."
- "The nursing staff from Golden Years [] failed to notify the physician and/or New Century [] of Mr. Richard's development of a stage 2 left heel ulcer."

Based on our review of Nurse Aguirre's addendum, issued after the trial court order's required the report to be "more specific as to which breaches of the standard of care apply to Golden Years[,]" we cannot say that Nurse Aguirre's report as amended by her addendum failed to identify Golden Years' standard of care and alleged breach with specificity. The allegations in the Aguirre addendum identify the alleged conduct Plaintiff has called into question and specifically advise Golden

26

Years of the care Plaintiff alleges Golden Years should have provided but did not provide. *See Baty*, 543 S.W.3d at 693-94; *Palacios*, 46 S.W.3d at 880.

But even assuming Nurse Aguirre's reports were deficient as to setting forth the standard of care and breach, Appellant's brief on appeal does not challenge Dr. Streitmann's reports' or opinions as to stating a standard of care and breach. Where a plaintiff serves reports of more than one expert, we consider the expert reports in the aggregate to determine whether the plaintiff has satisfied the requirements of Chapter 74. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(i). In this case, Dr. Streitmann's addendum stated that a Golden Years employee pushed a wheelchair into Bruce's foot, and that some representative of Golden Years should have contacted Bruce's attending physician immediately when the new injury to the dorsum of the left foot occurred so that Bruce could receive proper wound care. We conclude that the specific allegations in Nurse Aguirre's and Dr. Streitmann's reports, as amended by their addenda, collectively provide Golden Years with notice of the conduct complained of by Plaintiff and what the experts believe Golden Years should have done differently. *See id.* We find no abuse of discretion by the trial court in concluding the expert reports sufficiently identified the relevant standard of care and alleged breach. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6).

27

Causation

With respect to Dr. Streitmann's reports, Appellant argues that Dr. Streitmann's reports are conclusory as to causation because the doctor failed to explain how Golden Years' failure to keep proper records resulted in Bruce's injuries, failed to adequately explain how Golden Years' alleged breach was a substantial factor in causing Bruce's injuries, and failed to adequately explain how Bruce's outcome would have been different with more timely treatment.

Dr. Streitmann's initial report states that

> . . . the attending physician should have been immediately notified of the new wound on the dorsum of the foot, and the worsening condition of the heel wound. . . Had the attending physician been informed of the true status and existence of both wounds, debridement and wound care could have prevented the ensuing cellulitis.

Dr. Streitmann's addendum further states that

> Failing to notify Mr. Richard's physicians so that proper wound care could be immediately provided, in reasonable probability, caused the cellulitis that was diagnosed upon his admission to the hospital.
>
> . . . .
>
> . . . had the attending physician been informed of the true status and existence of both wounds, debridement and wound care, in reasonable probability, would have prevented the ensuing cellulitis.

We disagree with the Appellant's argument that Dr. Streitmann's report, as supplemented by his addendum, does nothing more than merely assert that causation

28

exists. *Cf. Ngo v. Lewis*, No. 09-10-00140-CV, 2010 Tex. App. LEXIS 7432, at \*\*8, 13-15 (Tex. App.—Beaumont Sept. 9, 2010, no pet.) (mem. op.) (expert report that "merely asserts that causation exists is not enough[]" and was insufficient for not explaining the basis of the expert's opinions and for not identifying anything defendants could have done to change the outcome). Dr. Streitmann's reports contain factual references linked to the basis for his opinion. *See Wright*, 79 S.W.3d at 52 (citing *Palacios*, 46 S.W.3d at 879); *Windsor*, 121 S.W.3d at 47 (quoting *Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex. 1999)). The doctor's reports reference how the alleged breaches by Golden Years were a substantial factor in bringing about the injury to the dorsum of the left foot and that, absent said acts or omissions, the cellulitis would not have developed. *See Clapp v. Perez*, 394 S.W.3d 254, 261-62 (Tex. App.—El Paso 2012, no pet.) (citing *Wright*, 79 S.W.3d at 53; *Tenet Hosps. Ltd. v. Love*, 347 S.W.3d 743, 755 (Tex. App.—El Paso 2011, no pet.)).

On appeal, Golden Years also argues that Dr. Streitmann did not "adequately describe what 'wound care' he envisions, when this wound care needed to be implemented in the five-day window in question in order for cellulitis to be avoided, or explain why Mr. Richard, an individual already on hospice care, would have been a candidate for this treatment and would have responded to it." However, Golden Years did not make these arguments in its Motion to Dismiss or Reply filed after

Plaintiff submitted Dr. Streitmann's addendum. Because this argument does not comport with the argument made to the trial court, no error has been preserved on this argument. *See* Tex. R. App. P. 33.1, 47.1; *Wohlfahrt v. Holloway*, 172 S.W.3d 630, 639-40 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) ("To have preserved error, a party's argument on appeal must comport with its argument in the trial court.").

Considering Plaintiff's expert reports in the aggregate, and the arguments that were made before the trial court, we cannot say that the trial court erred in denying the Motion to Dismiss. The trial court could have reasonably concluded that Aguirre's and Steinmann's reports are sufficient to meet the threshold requirements under Chapter 74 and provide a fair summary of the applicable standard of care, explain how Golden Years allegedly breached that standard, inform Golden Years of the specific conduct called into question, and explain how Golden Years' failure allegedly caused an injury to Bruce. *See Wright*, 79 S.W.3d at 52; *Palacios*, 46 S.W.3d at 879; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6). The reports provide a basis for the trial court to conclude that Plaintiff's claims contain at least one viable liability theory with merit. *See Potts*, 392 S.W.3d at 631; *Wright*, 79 S.W.3d at 52; *Palacios*, 46 S.W.3d at 879.

We conclude that the trial court did not abuse its discretion in overruling Golden Years' objections and denying Golden Years' motion to dismiss. *See Baty*, 543 S.W.3d at 693. Having overruled all appellate issues, we affirm the trial court's order.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on November 27, 2017
Opinion Delivered July 12, 2018

Before McKeithen, C.J., Horton and Johnson, JJ.

31