Aurelio Ibarra MENDEZ, Tomas Padilla, Teresa Padilla, and Guillermina Ruiz, Appellants,

v.

SAN BENITO/CAMERON COUNTY DRAINAGE DISTRICT NO. 3, Appellee.

No. 13–98–661–CV.

Court of Appeals of Texas, Corpus Christi.

April 12, 2001.

Israel Ramon, Jr., Law Offices of Israel Ramon, Jr., McAllen, Yolanda L. Garza, San Benito, for Appellants.

Charles Willette, Jr., Willette & Guerra, L.L.P., Brownsville, Robert D. Ralston, Pflugerville, and Eileen Leeds, Willette, Guerra & Trevino, Brownsville, for Appellee.

Before Justices HINOJOSA, YAÑEZ, and SEERDEN.[1]

## OPINION

Opinion by Justice HINOJOSA.

Appellants, Aurelio Ibarra Mendez, Tomas Padilla, Teresa Padilla, and Guillermina Ruiz, sued appellee, San Benito/Cameron County Drainage District No. 3, for negligence, gross negligence, negligence per se, nuisance, and inverse condemnation. Appellee moved for summary judgment, and the trial court granted the motion. By five issues, appellants contend the trial court erred in denying their mo-

---

**1.** Retired Chief Justice Robert J. Seerden, assigned to this Court by the Chief Justice of the Texas Supreme Court pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1998).

tion to reconsider the granting of appellee's motion for summary judgment. We affirm.

## A. Background and Procedural History

On April 5, 1991, an extremely heavy rain fell in San Benito and flooded the La Palma subdivision.[2] The flooding affected approximately 700 individuals with homes and businesses in the area.

### 1. The Lawsuit

On April 15, 1991, ten plaintiffs filed suit against Missouri Pacific Railroad Company ("MOPAC") and Central Power & Light Company ("CP & L") alleging that they had:

> suffered extensive damages to their property by reason of rising water. The occurrence of the rising water was due to the negligent conduct of the Defendants by diminishing the carrying capacity of a drainage ditch by placing it, or causing it to be placed underground, and erecting a barrier in the drainage ditch, which drainage ditch had been constructed and was designed to drain rain water from the areas in question. By negligently obstructing the drainage ditch, the flow of rainwater was impeded, causing it to rise and flood the areas in question, thereby proximately causing extensive and permanent damage to the Plaintiffs.

Appellant, Tomas Padilla, was one of the ten original plaintiffs. Appellants, Aurelio Ibarra Mendez, Teresa Padilla, and Guillermina Ruiz, subsequently intervened in the lawsuit. At one time, there were over 600 plaintiffs and intervenors in the case. We will refer to the plaintiffs/intervenors as the "residents."

In amended pleadings, the residents alleged:

> The Railroad built a raised railroad bed and then the Railroad filled in and obstructed the primary drainage ditch which drains the area south of the railroad track near [the residents'] properties in San Benito, Texas. CP & L altered its property near [the residents'] properties so as to divert or impound the natural flow of surface waters and permitted a diversion or impounding to continue in a manner which proximately caused damages to the properties of [the residents]. . . .

The residents further alleged that "MOPAC constructed a raised roadbed which acted as a dam and did not provide the necessary culverts and sluices required to drain the area south of its tract in San Benito, Texas."

In 1993, the Drainage District was added as a defendant. The residents alleged that the Drainage District had constructed and maintained drainage ditches and other permanent structures for drainage purposes near the properties in question, and as a result of the configuration of the drainage ditches and other permanent structures which the Drainage District had constructed, the properties were flooded on April 5, 1991. Pursuant to section 11.086 of the Texas Water Code, the residents claimed that they were "damaged by the conduct of Defendants in altering the natural flow and diverting and impounding surface waters near their homes and properties." The residents further asserted that "the Drainage District was negligent in the maintenance and cleaning of its drainage ditches and other permanent structures [and] negligent in permitting CP & L to alter the flow to the natural

---

**2.** It was estimated that the rainfall was 13 to 17 inches in a 24–hour period. Parts of San

Benito remained flooded for two to four days.

drain ditches and other permanent structures, and such negligence was one of the proximate cause[s] of the flooding conditions in question...." The residents contended that the Drainage District's acts constituted a taking, nuisance, negligence, gross negligence, and negligence per se.

The Drainage District generally denied the residents' allegations and asserted as affirmative defenses: (1) sovereign immunity; (2) the Texas Tort Claims Act (TTCA) did not allow the residents to sue for their claims; (3) the residents' alleged injuries and damages were caused by the negligence of a party over whom the Drainage District did not exercise control; and (4) the alleged injuries and damages were caused by an Act of God or unavoidable accident.

In their amended petition, the residents alleged the following:

**(1) Negligence**

(a) The Drainage District was negligent by allowing MOPAC to replace a trestle bridge with a raised railroad bed without proper permits and allowed them to fill in and obstruct the primary drainage ditch which drains the area south of the railroad track near [the residents'] properties.

(b) The Drainage District failed to take corrective action against the negligent conduct of the railroad, thus it failed to exercise reasonable care.

(c) The Drainage District failed to properly clean and maintain the drainage ditches.

(d) The Drainage District failed to apply the correct standard of care required for engineers designing or redesigning a bridge crossing, and to require the railroad to adhere to existing engineering standards of care upstream and downstream.

(e) The Drainage District failed to order the railroad to remove struts and to build proper sluices which were causing the retardation and backflow of the natural flow of surface waters.

(f) The Drainage District was negligent in allowing MOPAC and CP & L to build without permits, proper engineering standards, and a proper bridge design.

(g) The Drainage District failed to act when notified by the railroad that they were relying on CP & L's incorrect standard of care downstream.

**(2) Negligence Per Se**

[The residents] were damaged by the conduct of Defendants in altering the natural flow and diverting and impounding surface waters near their homes and properties in violation of Texas Water Code section 11.086;[3] Texas Revised

---

3. TEX. WATER CODE ANN. § 11.086 (Vernon 2000) provides:

(a) No person may divert or impound the natural flow of surface waters in this state, or permit a diversion or impounding by him to continue, in a manner that damages the property of another by the overflow of the water diverted or impounded.

(b) A person whose property is injured by an overflow of water caused by an unlawful diversion or impounding has remedies at law and in equity and may recover damages occasioned by the overflow.

(c) The prohibition of Subsection (a) of this section does not in any way affect the construction and maintenance of levees and other improvements to control floods, overflows, and freshets in rivers, creeks, and streams or the construction of canals for conveying water for irrigation or other purposes authorized by this code. However, this subsection does not authorize any person to construct a canal, lateral canal, or ditch that obstructs a river, creek, bayou, gully, slough, ditch, or other well-defined natural drainage.

(d) Where gullies or sloughs have cut away or intersected the banks of a river or creek to allow floodwaters from the river or creek to

Civil Statutes articles 6320,[4] 6325,[5] 6328;[6] and Texas Water Code sections 56.115,[7] 56.116,[8] 56.117,[9] 56.119,[10]

overflow the land nearby, the owner of the flooded land may fill the mouth of the gullies or sloughs up to the height of the adjoining banks of the river or creek without liability to other property owners.

4. TEX. REV. CIV. STAT. ANN. art. 6320 (Vernon 1926) provides:

Such corporation shall have the right to construct its road across, along, or upon any stream of water, water course, street, highway, plank road, turnpike, or canal when the route of said railway shall intersect or touch; but such corporation shall restore the stream, water course, street, highway, plank road, turnpike, or canal thus intersected or touched, to its former state, or to such state as not to unnecessarily impair its usefulness, and shall keep such crossing in repair.

5. TEX. REV. CIV. STAT. ANN. art. 6325 (Vernon 1926) provides:

Whenever any railroad company shall fail or refuse to comply with the requirements of this chapter, after demand is made in accordance therewith, such railway company shall pay to each person who made such demand the sum of five hundred dollars for each month they shall so fail or refuse to comply with such demand, the same to be recovered by suit.

6. TEX. REV. CIV. STAT. ANN. art. 6328 (Vernon 1926) provides:

In no case shall any railroad company construct a roadbed without first constructing the necessary culverts or sluices as the natural lay of the land requires, for the necessary draining thereof.

7. TEX. WATER CODE ANN. § 56.115 (Vernon 1972) provides:

(a) The engineer shall make a map of the district showing:
(1) the boundary lines of the district;
(2) the original surveys within the boundaries of the district; and
(3) the number of acres in an original survey which are included in the district if the boundary lines of the district cross the original survey.
(b) The engineer shall make maps and profiles of the canals, drains, ditches, and levees located in the district and their out-

lets extending beyond the boundaries of the district.
(c) A copy of the land office map of the county which shows the name and number of each survey and the area or number of acres within the district is sufficient to comply with the requirement for a map of the district, and any recognized map of a city or town in the district is sufficient to comply with the requirement for a map of that city or town.

8. TEX. WATER CODE ANN. § 56.116 (Vernon 1972) provides:

(a) The map and profile shall include the relation that each canal, drain, ditch, or levee bears to each tract of land through which it passes and the shape into which the canal, drain, ditch, or levee divides each tract.
(b) If any canal, drain, ditch, or levee cuts off any tract containing less than 20 acres of land, the map shall show:
(1) the number of acres divided from the tract;
(2) the number of acres in the whole tract;
(3) the shape of the small tract; and
(4) the relation of the small tract to the canal, ditch, drain, or levee.
(c) The profile may show the number of cubic yards necessary to be excavated to make each canal, drain, or ditch and to build any levee located in the district and may give the estimated cost of each.
(d) When the map, profile, and estimates are completed, the engineer shall sign them in his official capacity and file them with the clerk of the commissioners court.

9. TEX. WATER CODE ANN. § 56.117 (Vernon 1972), repealed by Act of May 24, 1999, 76th Leg., R.S., ch. 222, § 13, 1999 Tex. Sess. Law Serv. 717 (Vernon), provided in 1991:

Improvements included in the engineer's report and adopted by the commissioners court shall be constructed.

10. TEX. WATER CODE ANN. § 56.119, repealed by Act of June 16, 1995, 74th Leg., R.S., ch. 715, § 45, 1995 Tex. Sess. Law Serv. 3803 (Vernon), provided in 1991:

(a) Any district may exercise the power of eminent domain to condemn and acquire the right-of-way over and through public and private lands necessary for making canals, drains, levees, and improvements in

56.121,[11] 56.133,[12] and 56.134.[13]

The Drainage District failed to control, supervise and maintain all improvements referred to in this petition and failed to keep them in repair.

### (3) Gross Negligence

The Drainage District's actions constituted gross negligence in that the same was performed without any appropriate engineering and with knowledge that damage to property owners was highly likely and with apparent absence of concern for the rights and welfare of such property owners.

### (4) Strict Liability

Defendants have an absolute duty to prevent the occurrence of flooding.

### (5) Nuisance

the district and for making necessary outlets thereto in any county in the state. A district which is not operating under Article XVI, Section 59, of the Texas Constitution many not condemn property used for cemetery purposes. No district may condemn right-of-way through any part of any incorporated city without the consent of the lawful authorities.

(b) Eminent domain proceedings shall be in the name of the district and under the direction of the board, and expenses arising from the proceedings shall be paid from the construction and maintenance fund.

(c) An appeal from the finding and assessment of damage made by commissioners appointed for that purpose shall not suspend work of the board in providing drainage.

**11.** Tex. Water Code Ann. § 56.121 (Vernon 1972) provides:

The board shall build necessary bridges and culverts across or over canals, drains, ditches, laterals, and levees which cross a county or public road and shall pay for the construction with funds of the district.

**12.** Tex. Water Code Ann. § 56.133 (Vernon 1972), repealed by Act of June 16, 1995, 74th Leg., R.S., ch. 715, § 45, 1995 Tex. Sess. Law Serv. 3803 (Vernon), provided in 1991:

The design defect at the bridge is a nuisance.

### (6) Nuisance per se

The City of San Benito failed to supervise the Drainage District and to keep the city in the proper state for the safety and welfare of the people.

### (7) Inverse Condemnation

Defendants, except the Drainage District, have inversely condemned [the residents'] land for use of storage of water due to embankment created in E–drain when the trestle bridge was replaced.

### (8) Res Ipsa Loquitur

But for the negligence of defendants, the flood would not have occurred.

### (9) Texas Tort Claims Act (in the alternative)

(a) The engineer shall furnish to the contractor a sectionized profile of the contract work. The profile shall show:
(1) the depth, width, and slope of canals, drains, ditches, and levees;
(2) the number of cubic yards of earth to be removed; and
(3) other work to be done by the contractor.
(b) The contractor shall do the work under the supervision of the engineer, who shall indicate to the contractor the points at which the laterals shall intersect the main canal.
(c) The contractor may not deposit earth at a place at which it will interfere with constructing laterals or other improvements in the district or building bridges or other improvements on the public roads.
(d) After the work is completed under the contract, the engineer shall make a detailed report to the board showing whether or not the contract has been complied with fully, and if not, the extent of noncompliance.

**13.** Tex. Water Code Ann. § 56.134 (Vernon 1972), repealed by Act of June 16, 1995, 74th Leg., R.S., ch. 715, § 45, 1995 Tex. Sess. Law Serv. 3803 (Vernon), provided in 1991:

The board shall inspect any work done under contract as the work progresses.

[The residents] contend that the City and Drainage District are performing proprietary functions in draining the surface waters.

## 2. Drainage District's Motions for Summary Judgment

The Drainage District subsequently filed a motion for summary judgment.[14] The Drainage District asserted that: (1) as a matter of law, all of the residents' damages were caused by an act of God; (2) it is not liable for the performance of, or failure to perform, discretionary acts; (3) it is not liable for the residents' property damages because the damages were not caused by a Drainage District employee's operation of a motor vehicle or motor-driven equipment; (4) the residents' property damages did not constitute a taking by inverse condemnation because the flood was a unique occurrence, not an inevitable recurring flood; and (5) there is no nuisance cause of action in this case. The Drainage District relied upon its pleadings, the orders of the trial court, the deposition of John James Lynn, which included records from the National Weather Service and National Oceanic and Atmospheric Administration, and the opinion of this Court in *Juan Torres, et al. v. Harlingen Irrigation District*, No. 13–93–193–CV (Tex.App.—Corpus Christi Dec. 29, 1994, no writ) (not designated for publication).[15] The National Weather Service recorded 18.05 inches of rainfall in a 12–hour period on April 5, 1991. The National Oceanic and Atmospheric Administration recorded 13.96 inches of rainfall in San Benito on that date. This represented the heaviest rainfall recorded in San Benito in one day since before 1953.

On January 16, 1997, the trial court granted a partial summary judgment on the issues of nuisance and inverse condemnation. The court refused to grant summary judgment on the issue of negligence of the Drainage District in "maintaining its drain free of debris and allowing the railroad to alter the drainage design under the railroad without allowing for proper drainage," because the court concluded that the TTCA waived immunity "for the use of property, [and] the issue here is the manner in which the water district used or maintained its property."

On June 27, 1997, the Drainage District filed a "Renewed Motion for Summary Judgment." We will refer to this motion as the district's second motion for summary judgment. In the motion, the district urged the trial court to reconsider the arguments it had presented in its original motion for summary judgment and further argued that "sovereign immunity has not been waived for the property damage alleged by [the residents] ... pursuant to the [TTCA]." Specifically, the Drainage District asserted: (1) sovereign immunity is not waived by the TTCA for property damage, unless it arises from the operation or use of a motor-driven vehicle or motor-driven equipment, and (2) the appellants' claims are barred because they did not provide notice to the Drainage District within six months of the alleged damages as required by the TTCA. The Drainage District did not submit any additional summary judgment evidence.

In response, appellants objected to the Drainage District's second motion for sum-

---

14. At the time the Drainage District filed its motion for summary judgment, appellants were the only plaintiffs and intervenors left in the lawsuit.

15. *Torres* was a suit by residents of the Spanish Acres neighborhood in Harlingen against the Harlingen Irrigation District. The basis of the suit was flooding caused by the same extreme rains involved in this case.

mary judgment, arguing that it failed to address all of their claims and presented no new evidence. As summary judgment evidence, appellants attached: (1) the affidavit of Manuel Montemayor, a licensed engineer, which states that the railroad bridge fell below the standard of care for proper drainage; (2) a letter from the Drainage District to MOPAC in 1985 indicating a problem with Drain "E"; (3) the minutes from a meeting in 1986 of the Drainage District's commissioners, discussing the drains in the La Palma area; and (4) the affidavit of Conrado Lozano, a civil engineer, which states that the E–Drain did not follow the proper practice of providing an overflow channel over the pipes to handle the overflow in heavy rains. Appellants argued that they had amended their petition and that the Drainage District's motion did not address these amended pleadings.

The Drainage District responded that appellants' claims in the amended petition ignored that MOPAC was a settling defendant and CP & L was granted a summary judgment.[16] The Drainage District argued that the allegations in the appellants' amended petition are similar in substance to prior petitions.

On April 14, 1998, the trial court granted the Drainage District's second motion for summary judgment without specifying a reason. On September 22, 1998, appellants asked the trial court to reconsider its decision to grant the Drainage District's second motion for summary judgment. The trial court denied appellants' request for reconsideration, and granted the Drainage District's motion for severance. This appeal ensued.

## B. ISSUES PRESENTED

In five issues, appellants complain the trial court erred in denying their motion to reconsider the Drainage District's second motion for summary judgment.[17] Specifically, appellants contend the trial court erred in granting the Drainage District's second motion for summary judgment because: (1) the motion does not state any specific grounds for summary judgment; (2) appellants' pleadings were adequate to allege causes of action against the Drainage District; (3) the Drainage District failed to prove all elements of the alleged lack of notice; (4) the duty to control flood waters vests exclusively with the State of Texas and its agencies; and (5) the Drainage District did not address all causes of action in appellants' pleadings.

## C. STANDARD OF REVIEW

 The proper inquiry on appeal is whether the defendant, in seeking summary judgment, fulfilled its initial burden to: (1) establish as a matter of law that there remains no genuine issue of material fact as to one or more essential elements of the plaintiff's cause of action, or (2) establish its affirmative defense to the plaintiff's cause of action as a matter of law. *Casso v. Brand*, 776 S.W.2d 551, 556 (Tex.1989); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985); *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex.1972). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to

16. MOPAC settled with: (1) Aurelio Mendez on February 24, 1997; (2) Guillermina Ruiz on April 7, 1997; and (3) Tomas and Teresa Padilla on April 11, 1997. On May 22, 1997, the trial court granted CP & L's motion for summary judgment.

17. Because appellants do not contend the trial court erred in granting the original motion for summary judgment on the issues of nuisance and inverse condemnation, we will not address that motion. *See* TEX. R. APP. P. 47.1.

the non-movant must be taken as true. *Star–Telegram, Inc. v. Doe,* 915 S.W.2d 471, 474 (Tex.1995); *Nixon,* 690 S.W.2d at 549. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in his favor. *Nixon,* 690 S.W.2d at 549. Evidence favoring the movant's position will not be considered unless it is uncontradicted. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965). If a summary judgment is granted generally, without specifying the reason, it will be upheld if any ground in the motion for summary judgment can be sustained. *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex. 1989); *Weakly v. East,* 900 S.W.2d 755, 758 (Tex.App.—Corpus Christi 1995, writ denied).

### D. Did the Order Granting the Second Motion for Summary Judgment Dispose of All Pending Issues?

■ In their fifth issue, appellants contend the trial court erred in granting the Drainage District's second motion for summary judgment because it did not specifically address all causes of action alleged in appellants' pleadings.

■ This issue is of particular importance given the supreme court's recent decision in *Lehmann v. Har–Con Corp.,* 39 S.W.3d 191, 192–93, 44 Tex. Sup.Ct. J. 364, 364 (Feb. 1, 2001), in which the court held that "in cases in which only one final and appealable judgment can be rendered, a judgment issued without a conventional trial is final for purposes of appeal if and only if either it actually disposes of all claims and parties then before the court, regardless of its language, or it states with unmistakable clarity that it is a final judgment as to all claims and all parties." *Id.* A summary judgment for a defendant disposing of the entire case is proper only if, as a matter of law, the plaintiff cannot succeed on any theories pleaded. *Havens v. Tomball Community Hosp.,* 793 S.W.2d 690, 691 (Tex.App.—Houston [1st Dist.] 1990, writ denied).

Appellants do not contend that the trial court erred in granting the original motion for summary judgment on the issues of nuisance and inverse condemnation. Thus, appellants' only remaining claims are that the Drainage District was negligent in its actions, and an implication of waiver under the TTCA. The Drainage District's second motion for summary judgment asserted that appellants had not established facts which waived its sovereign immunity for the alleged property damage. We conclude that the second motion for summary judgment addressed all of appellants' pending causes of action and is, therefore, a final and appealable order. Appellants' fifth issue is overruled.

### E. Was the Second Motion for Summary Judgment Sufficiently Specific?

■ In their first issue, appellants complain that the trial court erred in granting the Drainage District's second motion for summary judgment because the motion does not state any specific grounds. Specifically, appellants contend that because the Drainage District's motion asks the court to "reconsider its first motion for summary judgment" it does not state any specific grounds.

■ The supreme court has held that the grounds for summary judgment must be contained in the motion for summary judgment. *McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 341 (Tex.1993). A trial court has inherent authority to reconsider any interlocutory order or judgment until the judgment becomes final. *H.S.M. Acquisitions, Inc. v. West,* 917 S.W.2d 872, 876–77 (Tex.App.—Corpus Christi 1996, writ denied). A trial court may, in the exercise of discretion, properly

grant summary judgment after having previously denied summary judgment without a motion by or prior notice to the parties, as long as the court retains jurisdiction over the case. *Id.* at 877. Thus, a trial court's action when it considers a party's motion to reconsider the court's prior ruling on a motion for summary judgment is within the court's discretion.

Given that the trial court had already granted summary judgment on the appellants' nuisance and inverse condemnation claims, the Drainage District was required to address only the appellants' claims that the district was negligent. While the Drainage District's second motion for summary judgment asked the trial court to reconsider the arguments the district had made in the original motion for summary judgment, the motion specifically asserted that (1) the district was a governmental unit covered by the TTCA, and (2) the residents had not alleged facts to support a cause of action for property damage under the Act. The Drainage District also asserted that appellants' claims were barred because the appellants did not provide notice to the Drainage District within six months of the alleged damages as required by the TTCA.

We conclude the second motion for summary judgment states specific grounds. Appellants' first issue is overruled.

### F. DID THE DRAINAGE DISTRICT SUFFICIENTLY ESTABLISH ITS ENTITLEMENT TO SOVEREIGN IMMUNITY?

█ In their second issue, appellants contend the trial court erred in granting the Drainage District's second motion for summary judgment because their pleadings were adequate to allege causes of action against the district.

Although appellants' discussion of this issue is not clear, we conclude they are asserting that the motion for summary judgment should not have been granted because the Drainage District did not sufficiently establish its affirmative defense of sovereign immunity.

Governmental units are generally immune from tort liability except where that immunity has been specifically waived by the legislature. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.021, 101.025 (Vernon 1997). Section 101.021 of the Texas Civil Practice and Remedies Code states that a governmental unit of the state, performing a governmental function, is liable for property damage caused by one of its employees acting within the scope of his employment only if: (1) the property damage arises from the operation or use of a motor vehicle or motor-driven equipment; (2) the employee would be personally liable to the claimant pursuant to Texas law; and (3) the governmental unit would be liable to the claimant under Texas law if the unit were a private entity. TEX. CIV. PRAC. & REM. CODE ANN. § 101.021 (Vernon 1997).

The Drainage District is a governmental unit as defined by the TTCA. TEX. CIV. PRAC. & REM. CODE ANN. § 101.001 (Vernon Supp. 2001); *see also Bennett v. Brown County Water Improvement Dist. No. 1,* 153 Tex. 599, 272 S.W.2d 498, 501 (1954) (drainage districts created under statutes enacted under authority of the Constitution are "political subdivisions of the state" of the same nature and stand on exactly the same footing as counties or precincts, or any other political subdivisions of the state). In order to prevail against a governmental entity entitled to sovereign immunity, any negligence cause of action must fit within the exceptions provided by section 101.021, or it fails as a matter of law. *See* TEX. CIV. PRAC. & REM. CODE ANN. 101.021 (Vernon 1997). Because appellants did not allege that their property damages arose from the use of a motor vehicle or motor-driven equipment, they

cannot avail themselves of the TTCA's waiver of immunity for property damage. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021 (Vernon 1997). Accordingly, we conclude the Drainage District is immune from liability as a matter of law. *Id.* Appellants' second issue is overruled.

### G. DUTY TO CONTROL FLOOD WATERS

■ In their fourth issue, appellants contend the trial court erred in granting the Drainage District's motion for summary judgment because the duty to control flood waters vests exclusively with the State of Texas and its agencies, including the Drainage District.

While it is true that the State of Texas, and consequently the Drainage District, has a duty to control flood waters, this does not negate the fact that the Drainage District has governmental immunity from liability. *See* TEX. CONST. art. XVI, § 59;[18] TEX. CONST. art. III, § 52; TEX. WATER CODE ANN. § 56.011 (Vernon 1972); *Bennett,* 272 S.W.2d at 501; *Peters v. Matagorda County Drainage Dist. No. 1,* 146 S.W.2d 779, 780 (Tex.Civ.App.—Galveston 1940, writ ref'd).

We hold the trial court did not err in granting the Drainage District's second

motion for summary judgment on the ground of sovereign immunity. We overrule appellants' fourth issue.

### H. DID THE DRAINAGE DISTRICT PROVE LACK OF NOTICE?

In their third issue, appellants contend the trial court erred in granting the Drainage District's motion for summary judgment because the district failed to prove all elements of lack of notice.[19]

The trial court granted the Drainage District's second motion for summary judgment without specifying a reason. If a summary judgment is granted generally, without specifying the reason, it will be upheld if any ground in the motion for summary judgment can be sustained. *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex. 1989); *Weakly v. East,* 900 S.W.2d 755, 758 (Tex.App.—Corpus Christi 1995, writ denied).

We have held the trial court did not err in granting the Drainage District's second motion for summary judgment on the ground of sovereign immunity. It is, therefore, unnecessary to address this issue. TEX. R. APP. P. 47.1.

---

**18.** Section 59 states, in relevant part:

(a) The conservation and development of all of the natural resources of this State, including the control, storing, preservation and distribution of its storm and flood waters, the waters of its rivers and streams, for irrigation, power and all other useful purposes, the reclamation and irrigation of its arid, semi-arid and other lands needing irrigation, the reclamation and drainage of its overflowed lands, and other lands needing drainage, the conservation and development of its forests, water and hydro-electric power, the navigation of its inland and coastal waters, and the preservation and conservation of all such natural resources of the State are each and all hereby declared public rights and duties; and the

Legislature shall pass all such laws as may be appropriate thereto.

(b) There may be created within the State of Texas, or the State may be divided into, such number of conservation and reclamation districts as may be determined to be essential to the accomplishment of the purposes of this amendment to the constitution, which districts shall be governmental agencies and bodies politic and corporate with such powers of government and with the authority to exercise such rights, privileges and functions concerning the subject matter of this amendment as may be conferred by law.

TEX. CONST. art. XVI, § 59.

**19.** *See* TEX. CIV. PRAC. & REM CODE ANN. § 101.101 (Vernon 1997).

## I. CONCLUSION

We affirm the trial court's order denying appellants' motion to reconsider the Drainage District's Renewed Motion for Summary Judgment.