

# NUMBER 13-19-00556-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

CITY OF BROWNSVILLE, TEXAS,                                             Appellant,

v.

WESLEY RATTRAY, MARCO NUNEZ,
MARTHA SAAVEDRA, ANTONIO VINDELL,
CARMEN PASHOS, STEVE TULLOS,
CESARIO PEDRAZA AND MINERVA PEDRAZA,
ROGER LULY, NORA GONZALEZ,
AND ROSALINDA CASTILLO,                                                Appellees.

## On appeal from the 107th District Court
of Cameron County, Texas.

# MEMORANDUM OPINION

### Before Justices Hinojosa, Perkes, and Tijerina
### Memorandum Opinion by Justice Tijerina

Appellees Wesley Rattray, Marco Nunez, Martha Saavedra, Antonio Vindell, Carmen Pashos, Steve Tullos, Cesario and Minerva Pedraza, Roger Luly, Nora Gonzalez, and Rosalinda Castillo (collectively, the "homeowners") sued appellant the City of Brownsville (the City), alleging that the City's negligent use of motor-driven equipment resulted in stormwater accumulation that flooded their homes. The City appeals the trial court's denial of its plea to the jurisdiction. In four issues, which we treat as one, the City argues that the trial court lacked subject matter jurisdiction over the homeowners' suit because its governmental immunity was not waived under the Texas Tort Claims Act (TTCA). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021. We reverse and remand.

## I.  BACKGROUND

### A.  The Homeowners' Pleadings

In their live pleading,[1] the homeowners alleged that their homes in the Quail Hollow subdivision in Brownsville, Texas were flooded with water from the nearby Resaca De La Guerra (Resaca).[2] They further alleged that the flooding was caused by the City's negligent operation of the City's stormwater system in response to heavy rainfall on August 31, 2015. According to the petition, the stormwater system consists of a series of drainage ditches, resacas, and other bodies of water, which are controlled by multiple motor-driven gates and pumps. Specifically, the homeowners alleged that the City's misuse of the North Laredo Gate "caused excess stormwater to accumulate in the

---

[1] The homeowners filed an original petition and seven amended petitions.

[2] "Resacas are former channels of the Rio Grande found in the southern half of Cameron County." Charles M. Robinson III, "Resacas," HANDBOOK OF TEX. ONLINE, http://www.tshaonline.org/handbook ,/online/articles/rbrnp (last visited Sept. 10, 2020). "Resacas are naturally cut off from the river, having no inlet or outlet." *Id*.

Resaca" and thereby caused their "homes to flood approximately [two] feet resulting in extensive property damages." They further alleged that though the City "undertook steps to prevent flooding[,] [t]hey did so negligently and instead caused flooding."

The homeowners also generally alleged that "the misuse of motor[-]driven equipment i.e. pumps and actuators, by [City] employees caused and/or contributed to the [R]esaca flooding[.]" Accordingly, the homeowners contended that their claims invoked the waiver of immunity found in the TTCA for property damage arising from a City employee's negligent operation or use of motor-driven equipment. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1).

## B.     Plea to the Jurisdiction

The City answered suit and later filed a plea to the jurisdiction. In its plea, the City argued that its immunity from suit was not waived by the TTCA, and, therefore, the trial court lacked subject matter jurisdiction over the homeowners' suit. Specifically, the City contended that any allegations concerning the nonuse of motor-driven equipment did not invoke the statutory waiver. It further argued that there was no evidence that the City's operation or use of motor-driven equipment caused the homeowners' property damage. The City supported its plea to the jurisdiction with affidavits and the homeowners' written discovery responses.

The homeowners filed a response and multiple supplemental responses contending that the City's operation of motor-driven pumps contributed to excess water in the Resaca. The homeowners supported their response with documentary evidence, deposition testimony, and affidavits.

3

The jurisdictional record generally shows the following. Around noon on August 31, 2015, Jose Figueroa, a City employee charged with stormwater management, directed the City's public works crews to monitor potential stormwater flows and flooding conditions in response to a rainstorm that day. Figueroa and his coworker, Leo Saldivar, reported to the area near Quail Hollow to monitor the stormwater flowing into the Resaca. The Resaca has five sluice gates that regulate the flow of the City's stormwater. Several subdivisions in the City drain into the Resaca which normally flows from west to east. On the date in question, four of the five gates were initially open, including the North Laredo Gate located immediately downstream from the subdivision.

At 1:00 p.m., Figueroa and Saldivar noted that the Resaca had normal positive water flow directed downstream near the North Laredo Gate. They proceeded to the South Laredo Gate further downstream and again observed positive water flow through the open gate. The two then reported to Kumquat Street and observed that the nearby gate was closed as it was normally kept. The Kumquat gate controls the water flow from the Resaca to the City's primary drainage ditch, the North Main Drain. At the time of their inspection, the water level for the ditch was high.

Figueroa and Saldivar returned to the North Laredo Gate at 2:00 p.m., where they now observed abnormal negative water flow moving upstream toward Quail Hollow.[3] They believed this was due to the stormwater draining into the Resaca. Figueroa closed the North Laredo Gate intending to prevent further negative water flow upstream toward the homeowners' homes in Quail Hollow.

---

[3] The parties refer to "negative water flow" as abnormal water flow from downstream to upstream.

After closing the North Laredo Gate, Figueroa and Saldivar returned to the South Laredo Gate where they placed motor-driven portable pumps for the purpose of pushing the stormwater downstream, thereby reducing the potential for upstream water flow. They placed another pump near the Kumquat Gate to pump water from the Resaca into the North Main Drain. They then activated fixed pumps further downstream to pump water out of the Resaca. Figueroa and Saldivar returned to the North Laredo Gate at 3:00 p.m., where they observed knee-deep water over the nearby road as well as continued negative water flow. Thereafter, the homeowners experienced flooding to their homes.

## C. Trial Court's Ruling

Following a hearing, the trial court signed an order denying the City's plea to the jurisdiction. This interlocutory appeal followed. *See id.* § 51.014(a)(8) (permitting an interlocutory appeal of an order denying a governmental unit's plea to the jurisdiction).

## II. TEXAS TORT CLAIMS ACT

In its sole issue, the City contends its immunity from suit was not waived because there is no evidence that the flooding of the homeowners' property was caused by the City's use of motor-driven equipment. In particular, the City challenges both the "operation or use" and "arises from" elements of the statutory waiver of immunity. The homeowners allege their claims invoked the waiver of immunity found in the TTCA for property damage arising from the City's negligent operation or use of motor-driven equipment.

## A. Standard of Review

A plea to the jurisdiction is a dilatory plea; its purpose is "to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue*,

5

34 S.W.3d 547, 554 (Tex. 2000). The plea challenges the trial court's subject matter jurisdiction over a pleaded cause of action. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Subject matter jurisdiction is a question of law; therefore, when the determinative facts are undisputed, we review the trial court's ruling on a plea to the jurisdiction de novo. *Id*. Governmental immunity[4] deprives a trial court of jurisdiction over lawsuits in which the State's political subdivisions have been sued unless immunity is waived by the Legislature. *Id*.; *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 636 (Tex. 2012). Therefore, governmental immunity is properly asserted in a plea to the jurisdiction. *Miranda*, 133 S.W.3d at 225–26.

A plaintiff has the burden to affirmatively demonstrate the trial court's jurisdiction, which encompasses the burden of establishing a waiver of a governmental entity's immunity from suit. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019). "When a defendant challenges jurisdiction, a court 'is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised.'" *Id*. (quoting *Bland Indep. Sch. Dist.*, 34 S.W.3d at 555). This is true even when the jurisdictional issue intertwines with the merits of the case. *Id*.

When, as here, a plea to the jurisdiction challenges the existence of jurisdictional facts, the standard of review mirrors that of a summary judgment, meaning that all the evidence is reviewed in the light most favorable to the plaintiff to determine whether a

---

[4] Governmental immunity is a common law doctrine protecting governmental entities from suit, similar to sovereign immunity. *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 57–58 (Tex. 2011). While sovereign immunity protects the State and its various agencies from suit, governmental immunity protects the State's political subdivisions, such as cities, counties, and school districts, from suit. *See id*. As a political subdivision, the City is generally protected from suit by governmental immunity. *See id*.

genuine issue of material fact exists. *Id*. In the face of an evidentiary challenge, the plaintiff has the burden to present sufficient evidence to create a genuine issue of material fact regarding the jurisdictional issue. *Id*. at 552. If the evidence raises a fact issue regarding jurisdiction, the plea cannot be granted, and a fact finder must resolve the issue. *Miranda*, 133 S.W.3d. at 227–28. On the other hand, if the evidence is undisputed or fails to raise a fact issue, the plea must be determined as a matter of law. *Garcia*, 372 S.W.3d at 635; *Miranda*, 133 S.W.3d at 228.

**B.      TTCA Waiver of Governmental Immunity**

The TTCA provides a limited waiver of governmental immunity. *Alexander v. Walker*, 435 S.W.3d 789, 790 (Tex. 2014) (per curiam). As relevant here, a governmental unit is liable for:

> (1)      property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
>
>> (A)      the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
>>
>> (B)      the employee would be personally liable to the claimant according to Texas law[.]

TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1); *see id*. § 101.025(a) (providing that sovereign immunity to suit is waived and abolished to the extent of liability created by the TTCA). The term "motor-driven equipment" refers to articles or implements driven by a motor and used for a specific purpose or activity. *See Tex. Nat. Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 868 (Tex. 2001).

**C.      Operation or Use**

**1.    Applicable Law**

As set out above, the statutory waiver of immunity requires the "operation" or "use" of motor-driven equipment. TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1). The Texas Supreme Court explained that the term "operation," as it is used in the TTCA, refers to "a doing or performing of a practical work." *LeLeaux v. Hamshire-Fannett Indep. Sch. Dist*., 835 S.W.2d 49, 51 (Tex. 1992). "Use" means "to put or bring into action or service; to employ for or apply to a given purpose." *Id*. The nonuse of property cannot support a claim under the TTCA. *White*, 46 S.W.3d at 869.

"In determining whether a plaintiff's claims are barred by immunity, we look to the substance of the claims alleged because governmental immunity cannot be circumvented by artful pleading." *Hidalgo County v. Dyer*, 358 S.W.3d 698, 704 (Tex. App.—Corpus Christi–Edinburg 2011, no pet.); *see Univ. of Tex. M.D. Anderson Cancer Ctr. v. McKenzie*, 578 S.W.3d 506, 513 (Tex. 2019) ("In determining whether a plaintiff has stated a claim for use of tangible personal property, we look to the true nature of the dispute—a plaintiff may not expand the [TTCA's] limited waiver through artful pleading."). We "construe the plaintiff's pleadings liberally, taking all factual assertions as true, and look to the plaintiff's intent." *Heckman v. Williamson County*, 369 S.W.3d 137, 150 (Tex. 2012); *see also Univ. of Tex. Med. Branch of Galveston v. Crawford*, No. 14-18-00758-CV, 2019 WL 7372163, at *2 (Tex. App.—Houston [14th Dist.] Dec. 31, 2019, no pet.) (mem. op.) ("In performing our review, 'we look to the true nature of the dispute' rather than the plaintiff's characterization of the claims." (quoting *McKenzie*, 578 S.W.3d at 513)). For example, in *City of North Richland Hills v. Friend*, the plaintiffs attempted to

8

circumvent the waiver of immunity by alleging "that the City used emergency equipment but omitted an integral component of that equipment." 370 S.W.3d 369, 372–73 (Tex. 2012). However, the Supreme Court held:

> [s]uch a formulation threatens to eviscerate any limiting principle on 'condition or use' entirely. It would enable plaintiffs, through artful pleading, to enlarge the scope of the waiver . . . . Despite our binding precedent that forbids claims for nonuse, plaintiffs could circumvent immunity simply by alleging that property that was not used is linked, albeit indirectly, to property that was used—and used properly.

*Id*. at 373. Thus, we focus "on the true nature of the dispute between [the City] and [the homeowners] to determine whether their claims are a disguised attempt to plead around the TTCA." *Kamel v. Univ. of Tex. Health Science Ctr. at Hous.*, 333 S.W.3d 676, 685 (Tex. App.—Houston [1st Dist.] 2010, pet. denied).

### 2. Analysis

The homeowners first sued the City claiming: "[t]he City of Brownsville and its employees were negligent in the operation of motor driven equipment by untimely activation of equipment . . . which in turn caused the water level behind Quail Hollow in Brownsville, Texas to rise." The City responded asserting governmental immunity barred the homeowners' complaints because nonuse of property cannot support a claim under the TTCA. Thereafter, the homeowners amended their pleadings and reframed their complaint to the following:

> Plaintiffs allege that the City of Brownsville and its employee, Jose Figueroa, knew or should have known upon closing the "North Laredo Gate" that any negative water flow at the "North Laredo Gate" was of a temporary nature since there was positive water flow downstream at the "South Laredo Gate". Closing the "North Laredo Gate" did, in fact, cause excess stormwater to accumulate in the Resaca de La Guerra and flood the

9

Plaintiffs homes.[5]

Although the homeowners attempt to invoke the "operation" or "use" requirement of the TTCA, the evidence provides that the gravamen of their complaint is based on the City's nonuse of the North Laredo Gate.

For example, the homeowners stated in their pleadings that at 1:00 p.m., the City arrived at the North Laredo Gate and noticed normal positive water flow from upstream to downstream. When the City returned one hour later, it observed negative water flow; water was now flowing abnormally downstream to upstream toward Quail Hollow. Consequently, the City closed the North Laredo Gate and stopped the negative flow of water from downstream to upstream. Because the City stopped the negative waterflow toward Quail Hollow, and as the homeowners state "intentionally ke[pt] the water west of the gate from causing flooding further downstream," the City's act of closing the gate could not be characterized as negligent. Similarly, the homeowners cannot allege that the City negligently flooded their homes when it closed the gate at 2:00 p.m. because it is undisputed that there was no flooding at that time. Instead, the evidence provides that sometime after 3:00 p.m., there was knee-deep water on a nearby road from the torrential rainfall, and thereafter the homeowners experienced flooding to their homes.

Furthermore, in discovery, the homeowners repeatedly averred that nonuse was the specific act of negligence driving their complaint:

- "negligent in the operation of motor-driven equipment by untimely

---

[5] There is conflicting evidence as to whether the City closed the North Laredo Gate manually or by way of a motor-driven actuator. Therefore, viewing the evidence in light most favorable to the homeowners, we presume the City closed the North Laredo Gate by way of motor-driven actuator. *See Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019).

activation of equipment";

- "pumps were not activated";

- "flood gates were not opened";

- "[t]he pump located on Laredo St. and flood gates were not opened";

- "[e]mployee was told to open flood gates but nothing was done";

- "[p]ump was not turned on and flood gates were not opened";

- employee was told "several times to open the flood gates and . . . it was never opened";

- "[t]he city did not go to open gates or turn on the pumps";

- "[t]he city of Brownsville did not open the gates to let the water flow to other areas";

- "[g]ates were not opened"

- "flood pumps were not activated and installed in a timely manner"

- "the City had sent personnel to open the flood gates; however, no one ever came."

None of the events in this chain constitute the "use" of property; all concern nonuse. "A plaintiff by artful pleading cannot recast a claim in order to avoid the adverse effect of a statute." *Head v. U.S. Inspect DFW, Inc.*, 159 S.W.3d 731, 742 (Tex. App.—Fort Worth 2005, no pet.). Therefore, construing the pleadings liberally in favor of the homeowners, as we must, we conclude the true substance of the homeowners' complaint is nonuse, which they state in their pleading caused the flooding that damaged their homes. Because the homeowners do not complain about the use of the gate—but instead allege the City's failure to act was negligent—the homeowners are attempting to frame what is actually a nonuse claim as a "use" claim in an effort to avoid the City's governmental immunity. *See*

11

*Dall. Cty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex. 1998) (holding that the "real substance of plaintiffs' complaint" was that the patient's death was caused by the failure of the hospital's staff to restrain him rather than by the use of property and thus was a claim of nonuse for which immunity was not waived); *Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 585–86 (Tex. 1996) (holding that the claim involved nonuse because the "gravamen" of the plaintiff's complaint was that "a different form of treatment . . . would have been more effective," not that the property that was actually used caused any harm); *Arnold v. Univ. of Tex. Southwestern Med. Ctr. at Dall*., 279 S.W.3d 464, 469 (Tex. App.—Dallas 2009, no pet.) (determining that the true nature of the plaintiff's complaint was that the doctor made an error in medical judgment, and "the fact that the pleadings also identif[ied] a piece of tangible personal property used during the procedure" did not affect the court's decision that the claim involved the use of property).

Like the pleadings in *Friend*, these pleadings merely identify the use of equipment during the rainstorm when the nature of the claim is based on the City's failure to relieve the overflow of water, not opening the gate, and the City's nonuse of various pumps or gates. *See* 370 S.W.3d at 373. Thus, this identification does not make this a claim that falls within the waiver of immunity. *See White*, 46 S.W.3d at 869 (holding the governmental unit's failure to use a motor-driven pump to dissipate fumes does not waive immunity under TTCA); *Friend*, 370 S.W.3d at 373; *Arnold,* 279 S.W.3d at 464; *Archibeque v. N. Tex. State Hosp.—Wichita Falls Campus*, 115 S.W.3d 154, 160 (Tex. App.—Fort Worth 2003, no pet.) ("The nonuse of property cannot support a claim under

12

the Act."). Accordingly, the homeowners' references to the City's 2:00 p.m. closure falls short of establishing the City's waiver of immunity. *White*, 46 S.W.3d at 869 ("[T]o invoke the [TTCA's] waiver of immunity, White's injury must have been caused by the TNRCC's actual use of the pump, not the TNRCC's failure to use it."); *see also Houghton v. City of Cisco*, No. 11-18-00029-CV, 2019 WL 3023539, at *5 (Tex. App.—Eastland July 11, 2019, pet. denied) (mem. op.) (concluding that the City's alleged failure to open a dam's sluice gates constituted nonuse of property that does not invoke the TTCA's waiver of immunity). Therefore, the homeowners' suit against the City is barred by the TTCA, and the trial court erred in denying the City's plea to the jurisdiction on this basis. *See Miranda*, 133 S.W.3d. at 227–28.

## D.     "Arises From"

Nonetheless, even if the homeowners' complaint stemmed from the use of equipment, their damages did not arise from that use.

### 1.     Applicable Law

The Texas Supreme Court has interpreted the "arises from" standard as requiring a "nexus between the operation or use of the motor-driven . . . equipment and a plaintiff's injuries." *Ryder Integrated Logistics, Inc. v. Fayette County*, 453 S.W.3d 922, 927 (Tex. 2015) (per curiam). The mere involvement of equipment is not enough. *Dall. Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 543 (Tex. 2003). Rather, "the equipment's use must have actually caused the injury." *Id*. (quoting *White*, 46 S.W.3d at 869). The operation or use of motor-driven equipment "does not cause injury if it does no more than furnish the condition that makes the injury possible." *Bossley*, 968 S.W.2d at 343. "When an alleged

cause is geographically, temporally, or causally attenuated from the alleged effect, that attenuation will tend to show that the alleged cause did no more than furnish the condition that made the effect possible." *Ryder*, 453 S.W.3d at 929–30 (quoting *City of Dallas v. Hillis*, 308 S.W.3d 526, 532 (Tex. App.—Dallas 2010, pet. denied)).

The required nexus is something more than actual cause but less than proximate cause. *See id*. at 928–29. Accordingly, a plaintiff can satisfy the "arising from" standard by demonstrating proximate cause. *Id*. at 929. The components of proximate cause are cause-in-fact and foreseeability. *Id*. (citing *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 551 (Tex. 2005)). "Cause in fact is essentially but-for causation." *Id*. "Given the Legislature's preference for a limited immunity waiver, we strictly construe section 101.021's [motor-driven equipment use] requirement." *Id*. at 927.

### 2.    Analysis

The homeowners contend that their damages arose from the use or operation of the gates, which caused their properties to flood. We disagree. First, it is undisputed that the gate itself did not cause the injury as plaintiffs allege that the gate caused the accumulation of water. Even if the homeowners' claim derived from the use of the gate, simply put, the mere act of closing or failing to open a gate does not cause flooding. If no rainstorm had occurred on August 31, 2015, and the City closed the North Laredo Gate, the homeowners would not have suffered property damage. The dissent states that under this calculus, "it is difficult to envision any circumstance under which water diverted by the use of motor-driven equipment would invoke a waiver of immunity under the TTCA . . ." and was unable to find "any Texas authority supporting such a narrow construction of the

nexus requirement." However, the "waiver of immunity is a limited one," and we should be "consistent with the clear intent of the [TTCA] that the waiver of sovereign immunity be limited." *LeLeaux,* 835 S.W.2d at 51 (emphasizing the limited nature of TTCA waiver). "Given the Legislature's preference for a limited immunity waiver, we strictly construe section 101.021's [use] requirement." *Ryder*, 453 S.W.3d at 927. In reaching a contrary conclusion, the dissent fails to strictly construe section 101.021. Thus, if we were to adhere to such a construction, any use of a gate by actuator —which does only one of two things, opens or closes to varying degrees—would constitute "use" under the TTCA. Furthermore, this construction would be "tantamount to abolishing governmental immunity, contrary to the limited waiver the Legislature clearly intended." *White*, 46 S.W.3d at 869 (quoting *Kerrville*, 923 S.W.2d at 585). We decline to adopt this expansion which would extend the waiver of immunity where it was not intended. "[I]t is important to recognize that the Legislature intended the waiver in the Act to be limited, not unlimited, as shown in the history of its passage." *Bossley*, 968 S.W.2d. at 341.

"Given the Legislature's preference for a limited immunity waiver," we evaluate the homeowners' evidence which, according to the dissent, "establish[ed] that the flooding of their homes would not have occurred but for the closing of the North Laredo Gate." First, the homeowners rely on "the presence of positive water flow downstream from the gate during the relevant time period indicating that negative water flow near the subdivision was temporary in nature." However, the "indicat[ion] that negative water flow near the subdivision was temporary in nature" is not evidence but merely the homeowners' allegation in response to the City's plea. However, this "bare allegation . . . will not survive

15

a plea to the jurisdiction challenging the existence of jurisdictional facts." *Univ. of Tex. Health Sci. Ctr. at Tyler v. Nawab,* 528 S.W.3d 631, 643 (Tex. App.—Texarkana 2017, pet. denied); *see also Edinburg Consol. Indep. Sch. Dist. v. Smith*, No. 13–16–00253–CV, 2016 WL 3068119, at *13 (Tex. App.—Corpus Christi–Edinburg May 26, 2016, no pet.) (mem. op.) (explaining that merely asserting legal conclusions or labeling the defendant's actions as ultra vires was insufficient to plead an ultra vires claim). The homeowners invite us to infer that any negative water flow was only temporary and would somehow reroute itself downstream from the gate, transforming into positive water flow. We decline to make such an inference. Rather, the City presented evidence that over one hour later, Figueroa still witnessed negative water flow contradicting the homeowners' "temporary" allegation.

Second, the homeowners rely on "the fact that water in the Resaca near the subdivision drains downstream through the opened gate" as evidence that the flooding would not have occurred but for the closing of the gate. However, the opposite occurred because at 2:00 p.m. water was flowing upstream through the opened gate toward Quail Hollow. As a result, this cannot serve as evidence that but for the gate closure, the homes would not have flooded—flooding was imminent when the gate was open. Similarly, the homeowners argue the statement of the City's Public Works Director that stormwater accumulating near the subdivision would have no place to go while the gate was closed is evidence that the gate closure flooded their homes. However, water was already flowing downstream toward Quail Hollow with "no place to go" while the gate was open. In other words, the flooding would have occurred regardless of the gate closure.

16

More importantly, the homeowners do not assert that but for the North Laredo Gate closure there would have never been enough water to cause flooding. For example, the homeowners do not allege that but for the City's closure or failure to open the gate, the nearby road's knee-deep water would not have flooded their home. Conversely, the homeowners state, "[w]hile it is true that a thunderstorm furnished water that eventually flooded [the] homes, the City of Brownsville undertook the duty to drain that water correctly." *Mendez v. San Benito/Cameron Cty. Drainage Dist. No. 3*, 45 S.W.3d 746, 756 (Tex. App.—Corpus Christi–Edinburg 2001, pet. denied) (requiring plaintiffs show "their property damages arose from the use of a motor vehicle or motor-driven equipment" to avail themselves of the TTCA's waiver for property damage). Although the City "has a duty to control flood waters, this does not negate the fact that the City has governmental immunity from liability." *Id.* at 756.

Lastly, the homeowners' expert, a professional engineer, opined that the City's closing of the gate at the North Laredo Road crossing "caused the accumulation of water upstream." But the legal standard is that the "equipment's use must have actually caused the injury" and not merely created a condition—the accumulation of water—that made flooding possible. *Ryder*, 453 S.W.3d at 927. "[M]ere involvement of equipment is not enough." *Whitley*, 104 S.W.3d at 543. At best, the closing or the failure to open the North Laredo Gate merely furnished a condition that may have made flooding possible. *See Galveston Racquet Club, Inc. v. City of Galveston*, 178 S.W.3d 167, 170–71 (Tex. App.— Houston [1st Dist.] 2005, no pet.) (holding immunity not waived under TTCA when damage was caused by deteriorated water lines rather than actual use or operation of

17

water pump that merely created condition of pressurized water flow into the lines); *see also Running v. City of Athens*, No. 12-18-00047-CV, 2019 WL 625972, at *4 (Tex. App.—Tyler Feb. 14, 2019, no pet.) (mem. op.) ("The use or operation of the high service pumps merely furnished the condition that allowed the backflow to occur," which is insufficient under the TTCA, even though it resulted in flooding and damage to homes and property).

Based on the foregoing, the homeowners have not shown that "but for" the closure, their properties would not have been damaged. *Ector County v. Breedlove*, 168 S.W.3d 864, 865 (Tex. App.—Eastland 2004, no pet.) (holding that the use of motor-driven equipment to perform roadwork that increased grade near home and that installed culverts to other properties so that water would not drain away from plaintiff's home did not constitute the use of motor-driven equipment under the TTCA because motor-driven equipment only created a condition that made flooding possible); *see also City of Tyler v. Likes*, 962 S.W.2d 489, 494 (Tex. 1997) (holding that claims for "negligently constructing and maintaining [drainage] culverts [and] negligently diverting water onto her property" after the culverts overflowed "did not arise from the use of motor vehicle or motor-driven equipment," so that the owner of home could not avail herself of waiver of immunity for property damage); *Bossley*, 968 S.W.2d at 343 (stating that operation or use of motor-driven equipment "does not cause injury if it does no more than furnish the condition that makes the injury possible."). "Given the legislature's preference for a limited waiver of immunity" and because "we strictly construe section 101.021's . . . use requirement," we conclude that the homeowners' claim does not fall within the exception to immunity set forth in section 101.021, and the homeowners did not meet their burden in establishing a

18

fact issue as to whether the flooding of the homeowners' property "arose from" the closing or the failure to open the North Laredo Gate. *Ryder*, 453 S.W.3d at 927. We sustain the City's sole issue. *See Miranda*, 133 S.W.3d. at 227–28.

### III.  CONCLUSION

We reverse the trial court's denial of the City's plea to the jurisdiction and remand the case to the trial court with instructions to dismiss the homeowners' suit.

JAIME TIJERINA
Justice

Dissenting Memorandum Opinion by
Justice Hinojosa.

Delivered and filed the
15th day of October, 2020.